**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| KASIEM BROWN, et al., | CIVIL ACTION NO. |
| | 07-824(NLH)(AMD) Lead case |
| Plaintiffs, | |
| | 07-974 Consolidated cases |
| v. | 07-975 |
| | 07-978 |
| COUNTY OF ATLANTIC, et al., | 07-979 |
| | 07-989 |
| Defendants. | 07-996 |
| | 07-1115 |
| | 07-1116     **OPINION** |
| | 07-1126 |
| | 07-1129 |
| | 07-1159 |
| | 07-1466 |
| | 07-1639 |
| | 07-1753 |
| | 07-1754 |
| | 07-1836 |
| | 07-1865 |
| | 07-1948 |
| | 07-2099 |
| | 07-2384 |
| | 07-2385 |
| | 07-2421 |
| | 07-2560 |
| | 07-2597 |
| | 07-2646 |
| | 07-2954 |
| | 07-3704 |

**APPEARANCES:**

JUSTIN R. WHITE
MICHAEL LOUIS TESTA, SR.
BASILE & TESTA, PA
424 W. LANDIS AVENUE
VINELAND, NJ 08360

JOSEPH C. GRASSI
BARRY, CORRADO, GRASSI & GIBSON, P.C.
2700 PACIFIC AVENUE
WILDWOOD, NJ 08260

On behalf of plaintiffs in 07-824 and 07-1159

THOMAS MCKAY, III
KELLYN J.W. MULLER
COZEN & O'CONNER, ESQS.
457 HADDONFIELD ROAD
SUITE 300
CHERRY HILL, NJ 08002

On behalf of all other plaintiffs, except those
appearing *pro se*

JUSTIN FARMER
MOUNTAINVIEW YOUTH CORRECTIONAL FACILITY
31 PETTICOAT LANE
ANNANDALE, NJ 08801
Appearing *pro se* in 07-2421

BRANDON SUMMERS
ATLANTIC COUNTY JUSTICE FACILITY
5060 ATLANTIC AVE.
MAYS LANDING, NJ 08330
Appearing *pro se* in 07-2560

THOMAS J. DECKER
DECKER & MAGAW, ESQS.
507 WESTFIELD AVENUE
WESTFIELD, NJ 07090

On behalf of all defendants

**HILLMAN**, District Judge

This case concerns plaintiffs' claims that defendants violated

their federal and state constitutional rights, as well as acted

negligently, when they were allegedly exposed to Tuberculosis (TB)[1]

---

[1]TB is a disease caused by bacteria, and not everyone
infected with this bacteria becomes sick.  There are two
different manifestations of TB--active TB and latent TB.  A
person diagnosed with latent TB is someone who is infected, but
is asymptomatic and cannot spread TB to others.  Someone with
latent TB retains a small chance of developing active TB at a
later point in time, although the TB bacteria could remain
inactive for a lifetime without causing disease or physical harm.

at Atlantic County Justice Facility (ACJF) in October 2006.
Shortly after the lead case was filed by several plaintiffs in
February 2007, numerous additional complaints were filed *pro se* by
other inmates claiming the same damages.[2]  *Pro bono* counsel was
appointed to all the *pro se* plaintiffs who wished to be represented
by such counsel.  During the pendency of these cases, which were
consolidated for discovery purposes, many actions were either
settled[3] or dismissed.  Presently, 28 cases remain (35 plaintiffs
in total), all of which are the subject of defendants' motions for
summary judgment.  Plaintiffs have opposed defendants' motions.
For the reasons expressed below, defendants' motions will be
granted.

**BACKGROUND**

Plaintiffs, inmates at ACJF in October 2006, allege that they
were exposed to TB when inmate and fellow plaintiff, Mateen Dennis,
entered ACJF on October 7, 2006 with active TB, and remained in the
general population until October 27, 2006, when he was transferred
to Shore Memorial Hospital.  During this time, Dennis was housed in
the area of the jail identified as F Left.

---

None of the remaining plaintiffs developed either active TB or
latent TB as a result of exposure at ACJF.

[2]Approximately 52 cases were filed, representing the claims
of over 70 plaintiffs.

[3]It appears that three plaintiffs contracted active TB and
fifteen plaintiffs contracted latent TB as a result of their
exposure to a fellow inmate at ACJF.

Dennis's medical records indicate that when he entered ACJF he informed the medical staff that he had suffered from TB in the past, he had been treated for TB, but he had "run out of meds." Nonetheless, Dennis was cleared to enter the general population because a TB test was read as "negative" and because a physical examination revealed his health to be "normal."  During the three weeks he was housed in F Left, however, Dennis exhibited "bad cold"-like symptoms, and was "coughing up dark sputum."  On October 26, 2006, Dennis was given a chest x-ray, which revealed active TB.

Dennis and numerous other inmates ultimately filed suit against ACJF officials and staff and the County of Atlantic.  They claim that defendants violated the Eighth Amendment proscription against cruel and unusual punishment (applicable to convicted inmates), the Fourteenth Amendment guarantee of adequate medical care to pretrial detainees, as well as the analog New Jersey state constitutional protections.  Plaintiffs also claim that defendants are liable for negligent infliction of emotional distress.

Defendants have moved for summary judgment in their favor on several bases.  In addition to arguing that plaintiffs' claims are barred as a matter of law, specifically with regard to the Prison Litigation Reform Act and the New Jersey Tort Claims Act, overridingly, defendants argue that plaintiffs have not, and cannot, prove that they suffered any damages.  Plaintiffs counter that the issue of damages is for the jury to decide.

To facilitate the analysis of the numerous plaintiffs' claims, the parties have agreed to a categorization of each plaintiff's status relative to Mateen Dennis:

Category A - Plaintiffs who were never incarcerated at any time in F Left.[4]

Category B - Plaintiffs who were incarcerated in F Left, but not during the period of time that Mateen Dennis was incarcerated and allegedly contagious.[5]

Category C - Plaintiffs who were incarcerated in F Left with Mateen Dennis.[6]

---

[4]These plaintiffs are Randolph Carson, Derek Johnson, Paul Smith, Stanley Smith (all in case 07-824), Benjamin Stoner (07-3704), Justin Farmer (07-2421), and Brandon Summers (07-2560). Randolph Carson was housed with Mateen Dennis at ACJF after he returned from Shore Memorial Hospital and before he was sent to New Jersey State Prison.  Carson has not presented any evidence to dispute that Dennis was no longer contagious at that point. Farmer and Summers are proceeding pro se, and have not stipulated as to their "category."  They have not refuted the certifications provided by defendants that demonstrate they fall into Category A.

[5]These plaintiffs are Marcus Collins, Timothy Hadley, James Jones (all in case 07-824), Fareed Alexander (07-2954), Lorenzo Belfor (07-2385), Richard Bell (07-996), Marlon Brooks (07-1754), Terry Davis (07-2646), Christopher Faulcone (07-2099), James Farmer (07-2384), Lawrence Gaines (07-979), Terrance Gould (07-989), Ray Hymans (07-1639), Barry Jackson (07-1126), Stephen McKenney (07-1948), Rondean McDonald (07-974), Rafael Mercado (07-1753), Alex Michael (07-1466), Tysheim Murphy (07-2597), Kareem Singleton (07-975), Bernard Smith (07-1836).  Gaines contends that he was exposed to inmate Rashawn Holloway who contracted active TB from Mateen Dennis.  Thus, Gaines can effectively be categorized in Category C as well.

[6]These plaintiffs are Darryl Mays (07-1159), Royal Hayes (07-1116), Leonardo Ortiz (07-1865), James Ruth (07-978), Kareem

Category D - Plaintiffs who were incarcerated in F Left with Mateen Dennis, but who prior to that incarceration previously had been diagnosed has having latent TB.[7]

As noted above, despite these categorizations, it is undisputed that none of the remaining plaintiffs contracted TB, in either its active or latent form, while at ACJF.

## **DISCUSSION**

### A.   **Jurisdiction**

Plaintiffs have brought their claims pursuant to 42 U.S.C. § 1983, as well as pursuant to the New Jersey constitution and New Jersey state law.  This Court has jurisdiction over plaintiffs' federal claims under 28 U.S.C. § 1331, and supplemental jurisdiction over plaintiffs' state law claims under 28 U.S.C. § 1367.

### B.   **Standard for Summary Judgment**

Summary judgment is appropriate where the Court is satisfied that "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986); Fed. R. Civ. P. 56(c).

---

Taylor (07-1115).

[7]These plaintiffs are Omar Molley (07-824) and Farhan Choudary (07-1129).

An issue is "genuine" if it is supported by evidence such that a reasonable jury could return a verdict in the nonmoving party's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit. Id. In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence "is to be believed and all justifiable inferences are to be drawn in his favor." Marino v. Industrial Crating Co., 358 F.3d 241, 247 (3d Cir. 2004)(quoting Anderson, 477 U.S. at 255).

Initially, the moving party has the burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial. Id. Thus, to withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party. Anderson, 477 U.S. at 256-57. A party opposing summary judgment must do more than just rest upon mere allegations, general denials, or vague statements. Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001).

**C.   Analysis**

All the remaining plaintiffs claim that their constitutional rights were violated, and they suffered emotional distress, by their exposure to TB at ACJF, except for Mateen Dennis, who claims constitutional and tort law violations concerning how ACJF handled his active TB status when he arrived and while he was housed at ACJF.  Accordingly, the claims of Dennis will be addressed separately.

**1.   Claims of plaintiffs, other than Mateen Dennis**

A fundamental requirement in order for plaintiffs to prevail on all of their claims is the establishment of damages.  See, e.g., Memphis Community School Dist. v. Stachura,  477 U.S. 299, 308 (1986) (discussing Carey v. Piphus, 435 U.S. 247 (1978)) ("[N]o compensatory damages could be awarded for violation of that [constitutional] right absent proof of actual injury.  Carey . . . makes clear that the abstract value of a constitutional right may not form the basis for § 1983 damages.")[8]; Rhodes v. Robinson, 612

---

[8]Carey allows for nominal damages for "certain 'absolute' rights that are not shown to have caused actual injury."  Carey v. Piphus, 435 U.S. 247, 266 (1978).  The Third Circuit has refused to apply Carey to an Eighth Amendment violation claim, where there is no establishment of "extreme deprivations."  Fontroy v. Owens, 150 F.3d 239, 244 (3d Cir. 1998).  In this case with regard to these plaintiffs, there is no evidence of such extreme deprivations.  See Jenkins v. Murray, 352 Fed. Appx. 608, 611 (3d Cir. 2009) (explaining that the relevant Eighth Amendment inquiry is whether the alleged deprivation is "sufficiently serious" and whether the inmate has been deprived of the "minimal civilized measure of life's necessities").

F.2d 766, 772 (3d Cir. 1979) (stating that "the critical element of each constitutional violation is not the nature of the plaintiff's injury but the manner of the infliction of that injury"); Veggian v. Camden Bd. of Educ., 600 F. Supp. 2d 615, 629 (D.N.J. 2009) (citing Williamson v. Waldman, 696 A.2d 14, 17-18 (N.J. 1997) (citing Decker v. Princeton Packet, 561 A.2d 1122 (N.J. 1989)) ("In order to establish a claim for negligent infliction of emotional distress under New Jersey law, 'a plaintiff must prove that defendant's conduct was negligent and proximately caused plaintiff's injuries.'").

Plaintiffs do not claim any physical injury, as they concede they did not contract any form of TB.  Instead, plaintiffs claim that they suffered emotional damages, such as fear and anxiety, relating to their exposure to TB.  Emotional damages may be compensable injuries--for both constitutional and state tort law claims--under certain circumstances.  See Rhodes, 612 F.2d at 772 ("Emotional distress can produce injury of the same severe magnitude as occurred in the cases of physical harm and withholding necessary medical care, and it can be inflicted in the same wanton and unreasonable manner."); Ironbound Health Rights Advisory Com'n v. Diamond Shamrock Chemicals Co., 578 A.2d 1248, 1250 (N.J. Super. App. Div. 1990) (explaining that "a person who sustains physical injury because of exposure to toxic chemicals may recover damages

for emotional distress based on a reasonable concern that he or she has an enhanced risk of future disease. . . . In the absence of physical injury, damages are allowed where the resultant emotional distress is severe and substantial."); Gendek v. Poblete, 654 A.2d 970, 972 (N.J. 1995) ("Our Court has recognized a claim for negligent infliction of emotional distress in cases in which a person who is the direct object of a tortfeasor's negligence experiences severe emotional trauma as a result of the tortfeasor's negligent act.").  Plaintiffs, however, have failed to (1) provide any proof that their emotional damages are the type that are compensable, and (2) otherwise provide any proof beyond their pleadings with regard to the extent of their alleged emotional damages.

As a primary matter, plaintiffs' alleged emotional damages for defendants' alleged federal constitutional violations are barred. See 42 U.S.C. § 1997e(e) ("No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury."); Allah v. Al-Hafeez, 226 F.3d 247, 250-51 (3d Cir. 2000) (explaining that under the PLRA, § 1997e(e), "in order to bring a claim for mental or emotional injury suffered while in custody, a prisoner must allege physical injury"); Fontroy v. Owens, 150 F.3d 239, 244 (3d Cir. 1998) ("Federal law does not provide inmates, who suffer no present

10

physical injury, a cause of action for damages for emotional distress allegedly caused by exposure to asbestos.").

With regard to plaintiffs' state claims, Category A and B plaintiffs are precluded from blaming defendants for any alleged emotional injury relating to exposure to TB from Mateen Dennis because they were either never housed with Dennis at all, or not while he was contagious.  The potential for exposure to the disease, and the corresponding potential for acquiring the disease, are key elements for an emotional distress claim of this type. Simply being in ACJF while Mateen Dennis was there is not enough. See Mauro v. Raymark Indus., Inc., 561 A.2d 257 (N.J. 1989) (explaining that in order for emotional damages to be compensable, the fear must "based on a reasonable concern that [the plaintiff] has an enhanced risk of  . . . disease"); Ironbound Health Rights Advisory Com'n v. Diamond Shamrock Chemicals Co., 578 A.2d 1248, 1250 (N.J. Super. App. Div. 1990) ("A person who sustains physical injury because of exposure to toxic chemicals may recover damages for emotional distress based on a reasonable concern that he or she has an enhanced risk of future disease."); see also Williamson, 696 A.2d at 23 (holding that although actual exposure to a disease is not required to maintain a claim for emotional damages, the fear of being infected with the disease must be reasonable--that is, it must be determined whether a person who receives a puncture wound from medical waste reacts reasonably in suffering serious psychic

11

injury from fear of AIDS).  Because it was impossible for plaintiffs to be exposed to TB because of Mateen Dennis, there can be no emotional injury related to that fear of exposure.

With regard to the remaining plaintiffs in Category C (plaintiffs who were housed in F Left with Mateen Dennis while he had active TB) and Category D (plaintiffs were housed with Mateen Dennis while he had active TB, but who had been previously diagnosed with latent TB), these plaintiffs have not provided any evidence to prove their emotional injuries.  Although it is undisputed that they have suffered the requisite exposure, which is deficient in the Category A and B plaintiffs' cases, it is well-established that for an emotional injury to be compensable, it must genuine, severe, and substantial.  Rhodes, 612 F.2d at 772; Gendek, 654 A.2d at 972; Williamson, 696 A.2d at 18; cf. Mitchell v. Horn, 318 F.3d 523, 535-36 (3d Cir. 2003) (finding that in order for a prisoner to maintain a claim for a physical injury, and a corresponding emotional injury, the prisoner is required to show "a less-than-significant-but-more-than-de minimis physical injury as a predicate to allegations of emotional injury").  Other than plaintiffs' bare allegations in their complaint, they have provided no documentation to support the genuineness, severity or substance of the emotional impact of their exposure to TB.[9]  Although expert

---

[9]Three plaintiffs--Kareem Taylor, Alex Michel and Christopher Faulcone--submitted letters in support of their oppositions to defendants' motions for summary judgment with

medical testimony is typically not necessary to prove emotional distress, see Bolden v. Southeastern Pennsylvania Transp. Authority, 21 F.3d 29, 36 (3d Cir. 1994); DeLuca v. Demwood Flooring, Inc., 2006 WL 552428, *7 (N.J. Super. App. Div. 2006) (citing J.W. v. L.R., 740 A.2d 146 (N.J. Super. App. Div. 1999)), plaintiffs are required to present some form of evidence to support the claims contained in their complaint, see Celotex Corp., 477 U.S. at 323 (instructing that the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial); Saldana, 260 F.3d at 232 ("A party

---

regard to their damages. Issues relating to Faulcone are discussed, *infra*, page 24. As for the other two, neither are sufficient to defeat summary judgment in defendants' favor. See Buckley v. Trenton Saving Fund Soc., 544 A.2d 857, 864 (N.J. 1988) ("The severity of the emotional distress raises questions of both law and fact. Thus, the court decides whether as a matter of law such emotional distress can be found, and the jury decides whether it has in fact been proved.").

    Kareem Taylor submitted a services request form to the Riverfront State Prison officials asking for "Individual Counseling." (Pl. Ex. C, Docket No. 132 at 12.)   His request was made on November 1, 2007, and in his letter to the Court dated December 28, 2009, Taylor states that he "has been put on a waiting list to see" a psychiatrist relating to his TB exposure. There is no evidence that Taylor has undergone counseling relating to his TB exposure, and Taylor makes no other statements regarding his emotional damages.

    Alex Michel wrote a letter dated January 14, 2010. With regard to emotional damages, Michel states, "This case should go to a jury because it is well qualified to w[]eigh and feel the anguish and emotional distress the Atlantic County Jail inflicted to the inmates in this case during that hellish episodes." (Pl. Ex. E, Docket No. 132 at 19.)   Michel has not presented any evidence that he was housed with Mateen Dennis while he was contagious, and he does not otherwise specifically explain the emotional injury he suffered.

opposing summary judgment must do more than just rest upon mere allegations, general denials, or vague statements.").  Without any explanation from plaintiffs themselves as to the nature of their emotional damages, the Court cannot even entertain the question of whether a reasonable jury could return a verdict in plaintiffs' favor.[10]  Consequently, judgment must be entered in favor of defendants on the plaintiffs' claims for emotional damages.

In a separate argument, plaintiffs contend that their cases should nonetheless proceed to trial in order to resolve their punitive damage claims.  For both constitutional violation claims and state tort law claims, punitive damages are available, sometimes even in the absence of compensatory damages.  In order to be awarded punitive damages, however, a plaintiff must prove (1) that defendants committed a constitutional tort or state law tort, and (2) that defendants' conduct was "motivated by evil motive or intent," involved "reckless or callous indifference," or was "actuated by actual malice or accompanied by a wanton and willful disregard of persons who foreseeably might be harmed."  Smith v. Wade, 461 U.S. 30, 56 (1983); Nappe v. Anschelewitz, Barr, Ansell & Bonello, 477 A.2d 1224, 1230 (N.J. 1984); N.J.S.A. 2A:15-5.12.

In this case, even accepting as true that defendants committed

---

[10]This same finding also applies to Category A and B plaintiffs.  Even if Category A and B plaintiffs demonstrated that they were somehow exposed to TB because of Mateen Dennis, their claims would fail because of the lack of any proof regarding their emotional damages.

the constitutional and state law torts plaintiffs allege, plaintiffs have not provided any evidence to show the "evil intent" that would warrant the imposition of punitive damages.  The purpose of punitive damages is to "punish aggravated misconduct by the defendant and to deter him and others from repeating it."  Nappe, 477 A.2d at 1230.  Plaintiff have not demonstrated what "aggravated misconduct" defendants should be punished for, or should be deterred in others.  Consequently, plaintiffs' punitive damages claims fail as well.[11]

### 2.   Claims of Mateen Dennis

As discussed above, the housing of TB-positive Mateen Dennis in F Left at ACJF is the basis for all of the plaintiffs' claims. Dennis has asserted his own claims for emotional and punitive damages against defendants for Eighth and Fourteenth Amendment violations, and for negligent infliction of emotional distress. His claims center on the allegation that he spent three weeks suffering from the symptoms of active TB without receiving the appropriate treatment by ACJF.

The facts surrounding Dennis' period of incarceration are mostly not in dispute.  Dennis was admitted to ACJF on October 7,

---

[11]The Court is aware that there are other reasons why punitive damages are not available against certain defendants-- for example, state and local governmental entities are immune from punitive damages under § 1983 and pursuant to the New Jersey Tort Claim Act--but these alternative bases will not be addressed.

2006.  ACJF medical staff screened him on that day and the next day.  During the health screens, Dennis stated that he had been diagnosed with TB twelve years ago, he had been on medication, but it had run out.  The medical staff's observation of Dennis's health upon admission was "normal," including the specific examination of his chest, and the TB skin test (PPD test) was read as "negative."

On October 17, 2006, Dennis was seen by the ACJF medical staff for what was deemed a "bad cold."  On October 22, 2006, Dennis submitted a sick call request, complaining of a sore throat and that he was "coughing real bad."  He was seen on October 25, 2006, and the progress note for that day states that Dennis was "coughing up dark sputum."  The note also states that Dennis would be referred "immediately to MD for chest x-ray & evaluation."  The next day, October 26, he received an x-ray, which was read on October 27.  The progress note states that there was "extensive bilat[eral] abnormalities," but "no definite evidence of active infection" and "PPD is non-specific."  That day, Dennis was admitted to Shore Memorial Hospital with the diagnosis of "pneumonia [rule out] TB."  In order to "rule out" TB, the hospital was required to collect sputum for three days, and he was to be observed for five days.

Although Dennis' medical records from this point on are not provided by either side, it is apparently undisputed that by the time Dennis was admitted to the hospital, he was suffering from

active TB.  It is disputed, however, whether Dennis' TB was active from the time of admission, and, regardless of that issue, whether Dennis's treatment and suffering during his three weeks at ACJF prior to being hospitalized are actionable and compensable.

Dennis recognizes that his claims for emotional damages are not actionable for his federal constitutional violation claims because of the PLRA bar, but he contends that his claims for punitive damages for defendants' Eighth and Fourteenth Amendment violations and for defendants' state law violations are not similarly barred.[12]  Defendants argue that Dennis has not provided any evidence to support his claim for punitive damages or for emotional distress damages.

As discussed above, punitive damages are available for both constitutional violation claims and state tort law claims, even in the absence of compensatory damages.  However, in order to be awarded punitive damages for his claims, Dennis must prove his constitutional tort or state law tort claims, and he must prove that defendants' conduct was "motivated by evil motive or intent,"

_____

[12]It appears that Dennis's amended complaint contains claims for physical damages as a result of defendants' deliberate indifference to his serious medical needs (Eighth Amendment and parallel state constitutional provision), denial of adequate medical care (Fourteenth Amendment and parallel state constitutional provision), and negligent infliction of emotional distress.  Dennis has not provided any argument or evidence to support these damages.  Accordingly, the Court considers these claims to be abandoned, and otherwise unsupported, and judgment shall be entered in defendants' favor.

involved "reckless or callous indifference," or "actuated by actual malice or accompanied by a wanton and willful disregard of persons who foreseeably might be harmed." Smith v. Wade, 461 U.S. 30, 56 (1983); Nappe v. Anschelewitz, Barr, Ansell & Bonello, 477 A.2d 1224, 1230 (N.J. 1984); N.J.S.A. 2A:15-5.12. Dennis has failed to do both.

First, to establish a violation of his constitutional right to adequate medical care, Dennis must show (1) a serious medical need, and (2) acts or omissions by prison officials that indicated deliberate indifference to that need. Estelle v. Gamble, 429 U.S. 97, 103-04 (1976); Natale v. Camden County Corr. Facility, 318 F.3d 575, 582 (3d Cir. 2003). Although no one disputes that TB is a serious medical need, Dennis has not articulated how defendants acted deliberately indifferent to that need. "[D]eliberate indifference is demonstrated '[w]hen . . . prison authorities prevent an inmate from receiving recommended treatment for serious medical needs or deny access to a physician capable of evaluating the need for such treatment.'" Monmouth County Corr. Inst. Inmates v. Lanzaro, 834 F.2d 326, 346 (3d Cir. 1987). "Deliberate indifference" is more than mere malpractice or negligence; it is a state of mind equivalent to reckless disregard of a known risk of harm. Farmer v. Brennan, 511 U.S. 825, 837-38 (1994).

Other than arguing generally that he should not have spent three weeks with a "bad cold" "hacking up dark sputum" prior to

18

hospitalization, and concluding that he had active TB from the time
he was admitted, Dennis does not explain how he was denied
appropriate treatment.  It is a plaintiff's ultimate burden to
prove his claims, and in the context of defeating a motion for
summary judgment, it is his burden to show material disputed facts.
In contrast to Dennis's conclusory claims, defendants have
demonstrated that upon admission to ACJF, Dennis's health was
"normal," and that a TB test was read as negative.  Based on that
initial screening, Dennis entered the general population.  When
Dennis complained of cold symptoms, he was provided cold
medication.  When he subsequently asked for a sick call, he was
examined, x-rayed, and then transferred to the hospital, all within
a few days.  At that point, it still was not clear to the ACJF, or
the hospital, whether Dennis was suffering from active TB.
Although Dennis may have been dissatisfied with his medical care,
a prisoner's subjective dissatisfaction with his medical care does
not in itself indicate deliberate indifference.  Andrews v. Camden
County, 95 F. Supp. 2d 217, 228 (D.N.J. 2000).  Further, "courts
will disavow any attempt to second-guess the propriety or adequacy
of a particular course of treatment . . . [which] remains a
question of sound professional judgment," Inmates of Allegheny
County Jail v. Pierce, 612 F.2d 754, 762 (3d Cir. 1979) (internal
quotation and citation omitted), and even if a doctor's judgment
concerning the proper course of a prisoner's treatment ultimately

19

is shown to be mistaken, at most what would be proved is medical malpractice and not an Eighth Amendment violation, <u>Estelle</u>, 429 U.S. at 105-06; <u>White</u>, 897 F.3d at 110.[13]  Consequently, Dennis has failed to prove his constitutional violation claims, and cannot prevail on his punitive damages claims.[14]

Similarly, Dennis has failed to support his negligent infliction of emotional distress claim.  Under New Jersey law, a cause of action for negligent infliction of emotional distress involves traditional concepts of duty, breach, and causation. <u>Williamson v. Waldman</u>, 696 A.2d 14, 17-18 (N.J. 1997) (citing <u>Decker v. Princeton Packet</u>, 561 A.2d 1122 (N.J. 1989)). "Determining defendant's negligence 'depends on whether defendant owed a duty of care to the plaintiff, which is analyzed in terms of foreseeability.'"  <u>Id.</u> (citing <u>Decker</u>, 561 A.2d 1122; <u>Dunphy v. Gregor</u>, 642 A.2d 372 (N.J. 1994)).  Likewise, to establish that "the alleged negligence constitutes the proximate cause of the emotional injury, the emotional distress must be reasonably foreseeable."  <u>Id.</u>  Additionally, it is axiomatic that in order to recover for negligent infliction of emotional distress, a plaintiff

---

[13]Dennis has not asserted a medical malpractice claim against any member of the ACJF medical staff.

[14]Dennis's failure to prove any constitutional or state law violation stops the analysis of whether punitive damages are warranted.  However, even if Dennis could prove his claims, he has also failed to articulate or demonstrate any "evil motive" by defendants to support a punitive damages claim.

must have suffered emotional distress.

Just like the other plaintiffs' claims, regardless of whether Dennis can establish that defendants were negligent, he has not explained or supported his demand for emotional damages.  Dennis claims that he suffered emotionally during the three weeks he spent at ACJF prior to being admitted to the hospital.  Dennis, however, has not shown that his alleged emotional injury is genuine, severe, and substantial.  <u>Rhodes</u>, 612 F.2d at 772; <u>Gendek</u>, 654 A.2d at 972; <u>Williamson</u>, 696 A.2d at 18.  Although the Court recognizes that having a "bad cold" and coughing up "dark sputum" is both physically and emotionally trying, the Court cannot make assumptions as to the severity of Dennis's emotional trauma as a result of that situation.  It should be up to a jury to determine whether to credit a plaintiff's claims of emotional damages, but it is for the Court to determine whether a plaintiff has experienced any emotional damages for the jury to consider.  <u>See</u> <u>Buckley v. Trenton Saving Fund Soc.</u>, 544 A.2d 857, 864 (N.J. 1988).  Dennis's conclusory statement that he suffered emotionally, without more, is insufficient to support his claim.  Consequently, defendants are entitled to judgment on Mateen Dennis's claims as well.

   **3.   Other issues related to plaintiffs Justin Farmer, Brandon Summers, Rondean McDonald, Christopher Faulcone, Tysheim Murphy, and Farhan Choudary**

Despite the above analysis and resolution of all the claims of the remaining plaintiffs, several issues concerning six plaintiffs

must be addressed.

### a.   Justin Farmer and Brandon Summers

Justin Farmer and Brandon Summers, both of whom have been proceeding *pro se* after their court-appointed *pro bono* counsel was relieved of his representation as of August 2009,[15] did not oppose defendants' motions.  Presumably this is because they never received the motions, as they have failed to provide the Court or counsel with their current addresses.  Farmer's last-known address was the Mountainview Youth Correctional Facility in Annandale, NJ. On November 24, 2009, mail sent by the Clerk's Office to Farmer was returned as undeliverable, with the notation "Transferred/Released."  (Civ. A. No. 07-2421, Docket No. 40.) Summers' last-known address was at ACJF.  On December 21, 2009, mail sent by the Clerk's Office to Summers was returned as undeliverable, with the notation "not here."  (Civ. A. No. 07-2560, Docket No. 58.)

Local Civil Rule 10.1(a) requires that a litigant inform the Court of this street address and inform the Court of any changes within five days.  Failure to do so can result in the dismissal of a litigant's case for his failure to prosecute.  Farmer and Summers have failed to meet this basic requirement, and it is apparent that have abandoned their claims.  Accordingly, their cases shall be

---

[15]Counsel's motion was based on Farmer's and Summers' failure to communicate with counsel.

dismissed for their failure to prosecute.[16]

### b.    Rondean McDonald

Rondean McDonald has submitted two letters, one directly to the Court[17] and the other in support of his opposition to defendants' motion for summary judgment, in which McDonald claims that his classification as a Category B plaintiff is incorrect.  He states that he was housed in F Left while Mateen Dennis was contagious, and there are "numerous officers that will assert the same."  (Civ. A. No. 07-824, Docket No. 129.)  He states that he cannot obtain the documentation to prove his housing location because he remains incarcerated, and he asks that the Court refrain from deciding defendants' motion until September 2, 2010, when he will be released.

There are two reasons why the resolution of defendants' motion as to McDonald's claims will not be stayed pending his release from jail.  First, McDonald, who filed his complaint on March 1, 2007, (see Civ. A. No. 07-974), has had three years to provide his proof regarding his housing location.  A litigant has a duty to prosecute his case in the time afforded by the federal and local rules.  Any proof McDonald believes would support his case should have been

---

[16]Even if Farmer and Summers did not intend to abandon their claims, summary judgment in defendants' favor would still be appropriate.  See Anchorage Assocs. v. V.I. Bd. of Tax Review, 922 F.2d 168, 175 (3d Cir. 1990); Fed. R. Civ. P. 56(e).

[17]McDonald is currently represented by *pro bono* counsel.

obtained and provided during the past three years.[18]

Second, even if McDonald was housed with Mateen Dennis while he was contagious, McDonald has not provided any proof with regard to his alleged damages.  Again, if such proof existed, it was required to have already been provided.  Accordingly, McDonald's request to stay the resolution of defendants' motion for summary judgment as to his claims is denied.

### c.   Christopher Faulcone

Christopher Faulcone, who is represented by *pro bono* counsel, has on several occasions written letters directly to the Court complaining about his counsel's "negligence" in his representation of Faulcone, and regarding defendants' continued negligence. Faulcone specifically complains that he has been forced to take "poisonous medications" as a result of his TB exposure at ACJF, and that counsel has failed to obtain his full medical records. Concomitantly, in response to Faulcone's concerns that defendants have not provided his full medical record, *pro bono* counsel has requested that defense counsel review the medical records that had been previously provided for Faulcone, and if there are any records that *pro bono* counsel does not have, to provide them immediately. (See Civ. A. No. 07-2099, Docket No. 55.)  Faulcone's counsel has

---

[18]Defendants have provided housing records which show that McDonald was not incarcerated on F Left until January 22, 2007. No plaintiff has disputed that Mateen Dennis was no longer contagious when he returned to ACJF after his hospitalization.

also asked the Court to delay resolution of defendants' motion as to Faulcone in order to resolve this medical records issue.

Since then, defendants have again provided Faulcone's counsel with all of his medical records, and voluntarily withdrew their motion for summary judgment pending further review of the medical records by Faulcone and his counsel.  Several months passed, and defendants refiled their motion for summary judgment.  In opposition, Faulcone argues that the motion should be denied, and he should be afforded more time to submit his proofs.  Faulcone's arguments are unavailing.

Faulcone claims that exposure to TB-positive prisoners other than Mateen Dennis caused him to contract latent TB, and to be required to take "poisonous" medications.[19]  Accordingly, Faulcone claims that his case should be submitted to a jury.  There are several problems with Faulcone's claims.  First, Faulcone's complaint--and all the plaintiffs' claims in this case--focus on ACJF's handling of Mateen Dennis's TB status and Faulcone's exposure relative to Dennis.  Faulcone entered the ACJF the day after Mateen Dennis had been transferred to the hospital.

_____

[19]In a letter dated January 1, 2010, Faulcone states that the events surrounding the TB exposure have "made my life the more an[x]ious with worry, that worry turning into all manner of sickness in my physical health, causing headaches, rashes, colds, loss of hearing and leg hurting, blurred vision, no[]se bleeds all from that medication they forced on me."  (Pl. Ex. D, Docket No. 132 at 16.)

Accordingly, any claims as currently pled fail, since, as discussed above, without being exposed to TB directly because of Mateen Dennis, there can be no emotional injury related to that fear of exposure.

Apparently recognizing this problem, in his letters to his counsel and the Court, Faulcone contends that during his time at ACJF from October 28, 2006 through December 12, 2006, he was exposed to other TB-positive inmates who had contracted TB because of their exposure to Mateen Dennis.  When Faulcone subsequently returned to ACJF on April 14, 2007, during the admission health screening process his TB test came back as positive for latent TB. Therefore, Faulcone contends that his second-hand exposure to Mateen Dennis caused him to contract latent TB.

Faulcone's claims are too attenuated and otherwise unsupported.  He has not provided any evidence to show (1) he was in fact housed with prisoners who contracted TB because of their exposure to Mateen Dennis, (2) how ACJF officials violated his constitutional rights or committed state law violations with relation to their handling of those TB positive inmates, (3) how ACJF officials violated his constitutional rights or committed state law violations with their conduct specifically directed at him, or (4) any evidence to support a causal link between his alleged exposure in October-December 2006 and his positive TB test when he returned to the jail four months later.  It has been over

26

three years since the filing of his complaint, and if Faulcone had any evidence to support such claims, it was required to have been provided by now.  Accordingly, Faulcone's request to stay the resolution of defendants' motion for summary judgment as to his claims is denied.

> ### d.   **Tysheim Murphy**

Recently, Tysheim Murphy wrote a letter to the Court stating that he believes his *pro bono* counsel has a conflict of interest. (See Docket No. 07-2597.)  Murphy asked his counsel to represent him in a separate and unrelated case against the ACJF concerning overcrowding and unsanitary conditions.  A complaint had been filed by another inmate (see Docket No. 07-3589 (RMB)), and Murphy presumably desired counsel to file a similar complaint.  Murphy's counsel informed Murphy that he could not represent him in such a case, because he and his firm represented one of the named defendants (Aramark) in the other matter.  Murphy claims this to be a conflict of interest.

The New Jersey Rules of Professional Conduct provide, in relevant part,

RPC 1.7. Conflict of Interest: General Rule

(a) Except as provided in paragraph (b), a lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if:
     (1) the representation of one client will be

> directly adverse to another client; or
>
> (2) there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client, or a third person or by a personal interest of the lawyer.

Neither conflict exists here.  Thus, Murphy's concern is without merit.

### e.   Farhan H. Choudhry

After defendants filed their motion for summary judgment, *pro bono* counsel for Farhan H. Choudhry filed a motion to be relieved as counsel.  Counsel relates that Choudhry failed to have any communication with counsel from April 2009 through April 2010, even though during that time counsel consistently mailed Choudhry correspondence and documents relating to his case, and none of that correspondence was ever returned.  In April 2010, counsel reports that Choudhry called counsel and informed him that he had not received any documents from counsel.  Choudhry, however, had moved but had not provided counsel with his new address.  Later that month, Choudhry wrote a letter to counsel informing him that he was unhappy with his representation and requesting that a new attorney be appointed to him.  At Choudhry's request, counsel has filed a motion to be relieved of counsel and has attached Choudhry's April 28, 2010 letter.  (See Docket No. 07-1129.)

As a result of the above analysis, summary judgment has been

entered in defendants' favor on Choudhry's claims.  His case is closed, and therefore Choudhry is without a case that requires counsel.  Thus, in practical effect, counsel's motion is moot.  However, because of the possibility of post-judgment motions,[20] the Court will address counsel's motion.

Local Civil Rules, Appendix H, § 5(a)(iii), provides that an attorney appointed as *pro bono* counsel may apply to be relieved from appointment if "a personal incompatibility exists between the attorney and the party, or a substantial disagreement exists between the attorney and the party concerning litigation strategy[.]"  Such an incompatibility and disagreement exists here.  Given the fact that counsel has already represented Choudhry for over three years and through the final resolution of his case, and Choudhry has asked that the Court discharge counsel, Choudhry's appearance as a pro se litigant from this point on (unless he were to obtain new counsel) would not be detrimental to Choudhry's claim.  Accordingly, good cause has been shown, and counsel's motion to be relieved in his representation of Choudhry is granted.[21]

---

[20]Federal Civil Procedure Rules 59(e) and 60(b) and Local Civil Rule 7.1(I) are vehicles for possible post-judgment relief. Motions pursuant to these rules are not automatic, and may only be advanced if there is a legitimate reason to do so.

[21]Counsel had previously filed motions to be relieved as counsel with regard to other plaintiffs, and several of those motions had been granted, while others were denied without

## <u>CONCLUSION</u>

For the reasons expressed above, all of defendants' motions for summary judgment are granted.  *Pro bono* counsel's motion to be relieved as counsel at to Farhan H. Choudhry is also granted. Plaintiffs' various requests for other relief is denied.  An appropriate Order will be entered.


Date: June 11, 2010                       s/ Noel L. Hillman

At Camden, New Jersey            NOEL L. HILLMAN, U.S.D.J.

---

prejudice.